COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Kelsey and Petty
Argued at Richmond, Virginia

UNPUBLISHED

DARRYL LAMONT HAWKINS

                                                MEMORANDUM OPINION* BY
v.       Record No. 1040-13-2                   JUDGE ROBERT J. HUMPHREYS
                                                MAY 20, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CAROLINE COUNTY
J. Howe Brown, Jr., Judge Designate

James T. Maloney (Joseph D. Morrissey; James T. Maloney, PC;
Morrissey & Goldman, LLC, on brief), for appellant.

Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Darryl Lamont Hawkins ("Hawkins") appeals his convictions for possession with intent

to distribute marijuana and manufacturing marijuana not for personal use in violation of Code

§ 18.2-248.1(a)(2) and (c) in the Circuit Court of Caroline County ("trial court").  Hawkins

concedes that he both possessed and manufactured the marijuana found in his home.  His single

assignment of error is that "the trial court erred in refusing to grant the defendant's motion to

strike where the Commonwealth's evidence failed to establish, beyond a reasonable doubt, that

the defendant intended to distribute [the] marijuana found in his home and manufactured near his

property."  Specifically, Hawkins argues that the Commonwealth's evidence failed to prove the

intent element of both charges because it failed to exclude a reasonable hypothesis of innocence:

that he possessed and manufactured the marijuana solely for his personal use.  The only issue

this Court must resolve is whether the evidence was sufficient to support the trial court's

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

rejection of the hypothesis that the marijuana was intended for Hawkins's personal use and its finding that he possessed and manufactured the marijuana with the intent to distribute it. For the reasons that follow, we affirm Hawkins's two convictions.

## I. STANDARD OF REVIEW

When the sufficiency of the evidence is challenged on appeal, our review is guided by well-established principles—"[t]his Court 'must examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it.'" Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (quoting Vincent v. Commonwealth, 276 Va. 648, 652, 668 S.E.2d 137, 139-40 (2008)). This Court's function is not to reweigh the credibility of the evidence. See Couture v. Commonwealth, 51 Va. App. 239, 248, 656 S.E.2d 425, 429-30 (2008). "The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide." Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986). The relevant inquiry is whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (en banc) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

"Where an offense consists of an act combined with a particular intent," in this case intent to distribute, "proof of the intent is essential to the conviction." Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988). "'Because direct proof of intent [to distribute drugs] is often impossible, it must be shown by circumstantial evidence.'" Scott v. Commonwealth, 55 Va. App. 166, 172, 684 S.E.2d 833, 836 (2009) (en banc) (quoting Servis, 6 Va. App. at 524, 371 S.E.2d at 165). However, "'[i]f evidence of intent is wholly circumstantial, all necessary circumstances proved must be consistent with guilt and inconsistent with innocence

and exclude every reasonable hypothesis of innocence.'" Barksdale v. Commonwealth, 31 Va. App. 205, 211, 522 S.E.2d 388, 391 (1999) (quoting Dukes v. Commonwealth, 227 Va. 119, 122, 313 S.E.2d 382, 383 (1984)). The requirement that the Commonwealth exclude all reasonable hypotheses of innocence is *not* a discrete rule in and of itself. James v. Commonwealth, 53 Va. App. 671, 681, 674 S.E.2d 571, 576 (2009). It "is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003).

Whether a hypothesis of innocence is reasonable is a question of fact, and a factual finding by the trial court is binding on appeal unless plainly wrong. Welshman v. Commonwealth, 28 Va. App. 20, 36-37, 502 S.E.2d 122, 130 (1998) (en banc). While a "factfinder 'cannot arbitrarily choose, as between two equally plausible interpretations, one that incriminates the defendant,'"—that "choice becomes *arbitrary*, however, only when 'no rational factfinder' could believe the incriminating inferences and disbelieve the exculpatory inferences." James, 53 Va. App. at 681-82, 674 S.E.2d at 576-77 (quoting Haskins v. Commonwealth, 44 Va. App. 1, 9, 602 S.E.2d 402, 406 (2004)). Therefore, on appeal, this Court "must determine 'not whether there is some evidence to support' the appellant's hypothesis of innocence, but, rather, 'whether a reasonable [fact finder], upon consideration of all the evidence, could have rejected [the appellant's] theories in his defense and found him guilty of [the charged crime] beyond a reasonable doubt.'" Emerson v. Commonwealth, 43 Va. App. 263, 277, 597 S.E.2d 242, 249 (2004) (quoting Hudson, 265 Va. at 513, 578 S.E.2d at 785).

## II. SUFFICIENCY OF THE EVIDENCE

In this case, the Commonwealth's evidence was sufficient to support the trial court's rejection of Hawkins's theory that he possessed and manufactured the marijuana found in his home for his personal use, and its conclusion that Hawkins intended to distribute the drugs.

Absent direct proof of intent to distribute, this Court and the Supreme Court of Virginia have recognized several factors that are probative circumstantial evidence of intent to distribute a controlled substance. Williams v. Commonwealth, 52 Va. App. 194, 202, 662 S.E.2d 627, 631 (2008). For example, "[p]ossession of a controlled substance in 'a quantity greater than that ordinarily possessed for one's personal use may be sufficient to establish an intent to distribute it.'" Id. (quoting Monroe v. Commonwealth, 4 Va. App. 154, 156, 355 S.E.2d 336, 337 (1987)). Conversely, where the quantity is small, the fact finder may infer the drugs were intended for personal use. See Early v. Commonwealth, 10 Va. App. 219, 222, 391 S.E.2d 340, 341 (1990). However, even if the quantity is small, the presence of other factors indicating distribution can overcome an inference of personal use. See Davis v. Commonwealth, 12 Va. App. 728, 733, 406 S.E.2d 922, 925 (1991). In addition to quantity, the presence of "equipment related to drug distribution" or packaging further suggests that the drugs were intended for distribution. McCain v. Commonwealth, 261 Va. 483, 493, 545 S.E.2d 541, 547 (2001). "Expert testimony, usually that of a police officer familiar with narcotics, is routinely offered to prove the significance of the weight and packaging of drugs regarding whether it is for personal use," or more indicative of distribution. Shackleford v. Commonwealth, 32 Va. App. 307, 327, 528 S.E.2d 123, 133 (2000); see also Askew v. Commonwealth, 40 Va. App. 104, 109, 578 S.E.2d 58, 61 (2003) (holding admissible "opinion testimony on the issue of whether the amount of an illegal drug possessed by an accused was, under the circumstances, inconsistent with individual personal use"). Other factors this Court regularly recognizes as probative evidence of an intent to distribute include: (1) the presence of large sums of unexplained cash, particularly in small denominations, (2) the "absence of any paraphernalia suggest[ing] personal use," (3) the manner in which the drugs are packaged, Welshman, 28 Va. App. at 37, 502 S.E.2d at 130, (4) the possession of recognized "tools of the drug trade," such as firearms or pagers, Scott, 55 Va. App.

at 173-74, 684 S.E.2d at 836, and/or (5) the simultaneous possession of a combination of disparate drugs, Williams, 52 Va. App. at 202, 662 S.E.2d at 631.

In addition to the factors enumerated above, in the specific context of manufacturing marijuana the "'supervised growth of many marijuana plants' indicates 'a continuing enterprise in the production and distribution of marijuana.'" Monroe, 4 Va. App. at 157, 355 S.E.2d at 337 (quoting Pierceall v. Commonwealth, 218 Va. 1016, 1023, 243 S.E.2d 222, 226 (1978)).  Factors this Court has found probative in determining whether marijuana is being manufactured not for personal use include:  the quantity and condition of the marijuana plants, evidence of the potential yield of the plants, evidence of supervised growth, and evidence of devices to assist with growth (i.e., lamps, watering devices).  See, e.g., Reynolds v. Commonwealth, 9 Va. App. 430, 440-41, 388 S.E.2d 659, 665-66 (1990) (holding the evidence insufficient to exclude the hypothesis that 29 marijuana plants were being grown for personal use where the plants were in such poor condition their weight only totaled 1.16 grams, there was no evidence of growth assistance, no evidence of the value of the product, no evidence if the plants were healthy enough to produce a usable product, no evidence of the potential yield of 29 plants).

Importantly, "[t]he Commonwealth need not present evidence of each of the above factors; however, the totality of the circumstantial evidence must exclude the reasonable hypothesis of possession for personal use." Holloway v. Commonwealth, 57 Va. App. 658, 667, 705 S.E.2d 510, 514 (2011).  "The quantum of evidence necessary to prove an intent to distribute depends on the facts and circumstances of each case." Askew, 40 Va. App. at 110, 578 S.E.2d at 61.  Moreover, even where no single piece of evidence sufficiently supports a finding on its own, "the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Derr v. Commonwealth, 242 Va. 413,

425, 410 S.E.2d 662, 669 (1991) (quoting Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979)).

The evidence in this case, viewed in the light most favorable to the Commonwealth, was sufficient to support the trial court's rejection of Hawkins's theory that he possessed and manufactured the marijuana for his personal use. Notwithstanding the fact that there was "some" evidence that supported the conclusion that Hawkins was indeed a marijuana user, in considering the totality of all the evidence, a reasonable factfinder could have rejected his assertion to the contrary and found that he possessed and manufactured the marijuana with the intent to distribute it. Specifically, considered together, the quantity of marijuana found, the presence of three digital scales, and the expert testimony of Investigator Wright and Sergeant Nutter, sufficiently support Hawkins's convictions.

The police seized a substantial quantity of marijuana, just under a half pound, from Hawkins's residence. Inside his home, the police found two mason jars containing three individually wrapped ziplock baggies of marijuana totaling 3.01 ounces. Outside the house, they discovered eleven growing marijuana plants—yielding 4.04 ounces when dried. Not only was the amount actually seized from Hawkins's residence substantial, but also the evidence regarding the potential future yield of the growing marijuana plants further supports the conclusion that they were being grown for distribution rather than for Hawkins's personal consumption. Investigator Wright testified that the potential yield of each fully matured individual plant could be up to one pound of marijuana. While the plants were not yet mature, they appeared to be healthy and in various stages of growth, as some of them "were starting to get the marijuana buds that [are] the smoking material on marijuana." There was evidence that Hawkins was regularly cultivating and supervising the growth of the plants. The marijuana plants growing next to the house were planted in five-gallon buckets before being planted into the ground. The marijuana

plants in the woods were growing in a clearing down a defined pathway, and nearby there was bucket of water and a wheelbarrow full of soil. Hawkins had a shed with fertilizer, potting soil, and post-hole diggers.

Hawkins argues that "there was no evidence as to when the plants would be ready to yield what amount of marijuana or how much [Hawkins] could be in possession of at one time." However, as stated above, the Commonwealth's expert testified that the plants were nearing maturity and that the potential yield for each of the eleven plants if grown under ideal conditions was up to one pound of marijuana per plant. Viewing the facts in the light most favorable to the Commonwealth, the trial court could reasonably infer that sometime in the near future Hawkins would have several pounds of saleable marijuana—an amount highly indicative of distribution rather than personal use. See, e.g., Dolan v. Commonwealth, No. 3167-01-2 (Va. Ct. App. Dec. 31, 2002) (finding the evidence sufficient to support the trial court's finding that the marijuana was not for personal use where six healthy plants were recovered, and based on the expert testimony as to yield-per-plant the recovered plants had a potential yield of six pounds of saleable marijuana).

In addition to the significant quantity of marijuana found at Hawkins's residence, the presence of the three digital scales—drug distribution equipment—further supports the trial court's conclusion that the marijuana was not for his personal use. See Barksdale, 31 Va. App. at 211-12, 522 S.E.2d at 391. In support of his argument that the Commonwealth failed to exclude the reasonable hypothesis that the marijuana was for his personal use, Hawkins asserts that there was nothing in the record linking the scales specifically to marijuana. However, Hawkins never offered any evidence that he used the scales for a purpose unrelated to the distribution of marijuana. Investigator Wright merely testified that it was not unusual for a person working from home to have scales to weigh packages. Hawkins never told police that the

scales were used for his business, nor did he testify at trial as to the use of the scales.

Consequently, the trial court was free to reasonably conclude that in conjunction with the

quantity of marijuana found, there was "no other explanation for the [presence of] the scales"

other than to aid in the distribution of marijuana. Moreover, even if Hawkins had offered an

alternate explanation for the presence of the scales, the factfinder was free to weigh the evidence

and to reject his explanation and infer that he lied to conceal his guilt. See id. at 212, 522 S.E.2d

at 391.

Finally, the expert testimony of Investigator Wright and Sergeant Nutter as to the

significance of the quantity of marijuana and the presence of the scales further supports the trial

court's ruling. Both witnesses were qualified as experts in the possession and manufacturing of

marijuana for personal use versus distribution. Both experts testified that *all the circumstances*

*considered together*, the 3.01 ounces of marijuana found inside the house, the eleven growing

marijuana plants, and the presence of the scales, were "very indicative of distribution," and not

consistent with personal use.

Hawkins argues that the Commonwealth's evidence fails to eliminate the reasonable

hypothesis that he was growing and possessing marijuana for his own use rather than for

distribution based on the fact that the police *did not* find any ziplock baggies or large amounts of

cash indicative of marijuana distribution, but *did* find evidence corroborating his statements that

he was a marijuana user, i.e., a tobacco grinder and a smoking device. The presence of packing

materials or large amounts of cash are factors that *may* be relevant when considering the totality

of the circumstances. However, the presence or absence of one factor is not dispositive. See

Holloway, 57 Va. App. at 667, 705 S.E.2d at 514. The evidence necessary to support a

conviction is unique to the facts of each individual case. See Askew, 40 Va. App. at 110, 578

S.E.2d at 61. For example, the fact that large sums of money or packaging materials were not

found at Hawkins's residence may be explained by the early nature of the venture, which could not be consummated until the marijuana plants fully matured and were ready for harvesting.

Hawkins's reliance on the significance of the presence of the smoking device and grinder are misplaced. While it is true that "the absence of any paraphernalia suggestive of personal use" is recognized as a factor "indicating an intent to distribute," Welshman, 28 Va. App. at 37, 502 S.E.2d at 130, the possession of such paraphernalia does not *per se* foreclose a finding of an intent to distribute. Rather, "the totality of the circumstantial evidence must exclude the reasonable hypothesis of possession for personal use." Holloway, 57 Va. App. at 667, 705 S.E.2d at 514. Thus, evidence indicating personal use, such as a small quality of marijuana, possession of a personal smoking device, or testing positive for the active ingredient in marijuana, does not negate the possibility of an intent to distribute when it is outweighed by evidence of distribution. See, e.g., Early, 10 Va. App. at 222, 391 S.E.2d at 341 ("While possession of a small quantity of a controlled substance creates an inference that the drug is held for personal use, when considered in conjunction with other circumstances, the small quantity possessed may support a finding of an intent to distribute."). This Court regularly affirms trial court findings of intent to distribute where there is also evidence of the defendant's personal drug use. See, e.g., Monroe, 4 Va. App. at 157, 355 S.E.2d at 337 (concluding that the evidence was sufficient to support the finding that the defendant possessed the marijuana with an intent to distribute where there was corroborated evidence that the defendant personally consumed an ounce to a quarter pound of marijuana per day). Investigator Wright testified that in this case there was evidence of personal use present at Hawkins's home, but "most people who sell marijuana also smoke it," therefore the presence of a smoking device "would just obviously indicate to you that they smoke, but it wouldn't necessarily rule out any possibility that they are also selling." Sergeant Nutter agreed that there was evidence of personal use but "most people

who sell marijuana also smoke it," therefore evidence of personal use such as a smoking device "wouldn't necessarily rule out any possibility that they are also selling."

In further support of his argument, Hawkins also points to the statements he made to the police that he had purchased the marijuana found inside the mason jars in Maryland for his personal consumption and that he was growing the marijuana plants instead of buying it "due to how much he smoked." However, in it is within the province of the factfinder to consider the totality of all the evidence and reject Hawkins's explanation that the marijuana was for personal use. See, e.g., Christian v. Commonwealth, 33 Va. App. 704 , 716, 536 S.E.2d 477, 483 (2000) ("Although defendant testified that he possessed the drugs for personal use and attributed the cash to wages, the evidence proved otherwise, and 'the trial court was entitled to disbelieve [defendant's] explanation and conclude that he lied to conceal his guilt.'" (quoting Dunbar v. Commonwealth, 29 Va. App. 387, 394, 512 S.E.2d 823, 827 (1999))).

## III. CONCLUSION

In sum, the trial court properly denied Hawkins's motion to strike the evidence because the Commonwealth presented a prima facie case for consideration by the factfinder. In consideration of all the evidence, a reasonable factfinder could have rejected the hypothesis that Hawkins possessed and manufactured the marijuana for personal use and found beyond a reasonable doubt that he intended to distribute it. Therefore, the evidence is sufficient to support the trial court's conclusion that Hawkins failed to rebut the Commonwealth's prima facie case. Accordingly, we affirm Hawkins's convictions for possession with intent to distribute marijuana and manufacturing marijuana not for personal use in violation of Code § 18.2-248.1(a)(2) and (c).

Affirmed.